UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

№ 06-CV-3023 (JFB) (ARL)
_____

HENRY JEAN-LOUIS,

Plaintiff,

VERSUS

NORTH SHORE UNIVERSITY HOSPITAL AT PLAINVIEW. COLLEEN LESCYNSKI, ADMINISTRATIVE DIRECTOR OF RADIOLOGY/CARDIOLOGY, GEORGINA CAPUTO AND KRISTINE LODICO

Defendants.
_____

MEMORANDUM and ORDER
December 14, 2007
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Henry Jean-Louis, a former Nuclear Medicine Technologist at North Shore University Hospital at Plainview (hereinafter, the "Hospital"), brought this case alleging race and/or national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.*, and New York State Human Rights Law, Executive Law § 290, *et seq.* Specifically, plaintiff alleges that the defendant Hospital, as well as defendant Hospital employees Colleen Lescynski, Georgina Caputo and Kristine Lodico (collectively, "defendants"), terminated his employment unlawfully on the basis of his race and/or national origin.

On August 17, 2007, defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. On October 17, 2007, defendants also moved for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.

For the reasons that follow, defendants' motion for summary judgment is granted in its entirety on all claims, both federal and state, and the motion for sanctions is denied.

I. Background

A. Facts

On April 5, 2005, Jean-Louis was hired by the Hospital as a Nuclear Medicine

Technologist. (Defs.' 56.1 ¶ 1.)[1] During plaintiff's sixteen week tenure at the Hospital, plaintiff's direct supervisor, Ms. Cory Langhan, was on maternity leave. (*Id.* at ¶ 2.) Due to Ms. Langhan's absence, plaintiff reported to defendant Colleen Lesczynski, who was the Administrative Director of Radiology and Cardiology at the Hospital at that time. (*Id.*) Plaintiff was a full-time technologist, while defendants Gierogina Caputo and Kristin Lodico were part-time technologists. (*Id.* at ¶ 3.) Nuclear Medicine Technologists are responsible for operating cameras that detect and map radioactive drugs in a patient's body to create diagnostic images. (*Id.* at ¶ 5.) William Raccioppi was the Chief Technologist in the Radiology Department at the Hospital. (*Id.* at ¶ 4; Raccioppi Decl. ¶ 1.)

(1) Plaintiff's Lateness

As a full-time technologist, plaintiff was the only employee who was scheduled to conduct morning scans for the Hospital and, therefore, was required to report to work at 8:00 a.m. (Defs.' 56.1 ¶ 8.) Plaintiff was to be the first person to arrive at work in the nuclear medicine department, and was responsible for conducting all scans until Ms. Caputo or Ms. Lodico arrived to work at their respective scheduled times later in the day. (*Id.* at ¶ 9.) The equipment used by the technologists requires 45 minutes of calibration every morning before the first scan. (*Id.* at ¶ 10.) The Hospital utilized a time card system to keep track of arrival and departure times of employees. (*Id.* at ¶ 11.) Therefore, plaintiff's time cards, which plaintiff created when he clocked in each morning, reflect the dates on which he was late and the time he arrived at work. (*Id.*)

Between April 7, 2005 and May 27, 2005, plaintiff was late a total of 25 times. (*Id.* at ¶ 12.)[2] Plaintiff was verbally warned about his lateness by Mr. Raccioppi on May 30, 2005. (*Id.* at ¶ 13.) It is the Hospital's policy to memorialize verbal warnings in writing in personnel files. (*Id.* at ¶ 14.) A written confirmation of the May 30 verbal warning is contained in plaintiff's personnel file, along with the time and date of his late arrivals.[3] (Raccioppi Decl. ¶ 11 and Ex. C.) Following the May 30 verbal warning, plaintiff was late another 29 times in June and July (prior to his July 28 termination).[4] (Defs.' 56.1 ¶ 12.)

---

[1] Where only one party's 56.1 statement is cited, the other party does not dispute the facts alleged, or there is no evidence controverting such fact.

[2] Defendants submitted copies of plaintiff's time cards with its summary judgment motion (Raccioppi Decl. ¶¶ 9-10 and Ex. B) and plaintiff does not dispute the accuracy of those cards. (Pl.'s 56.1 ¶ 12.)

[3] Defendant asserts that plaintiff was also verbally warned on two other occasions that his lateness was unacceptable. Specifically, defendants contend that he was warned about his lateness on April 28, 2005 and July 27, 2005 and have submitted evidence of warning memos in plaintiff's file memorializing those verbal warnings. (Raccioppi Decl. ¶ 11 and Ex. C.) Although conceding he was warned on May 30, 2005, plaintiff denies that he was warned on these other occasions. (Pl.'s 56.1 ¶ 6.) However, this disputed fact is immaterial for purposes of this summary judgment because, even assuming plaintiff was only warned on one occasion, his claims still cannot survive summary judgment for the reasons discussed *infra*.

[4] Plaintiff contends that he thought there was a ten-minute grace period for arriving to work late. (Jean-Louis Dep. at 102-105.) In particular, plaintiff testified at his deposition that he was

Thus, plaintiff was late a total of 54 times during his sixteen-week employment with the Hospital.[5]

(2) Complaints About Plaintiff's Behavior by Co-Workers and Others

Defendants also have presented evidence that, during plaintiff's sixteen weeks of employment at the Hospital, there were three complaints that plaintiff acted inappropriately or unprofessionally towards co-workers and others, all of which were reported to the Hospital administration. (Raccioppi Decl. ¶¶ 13-17; Lodico Dep. at 10-11; Caputo-Gangemi Dep. at 10-16.) The evidence as to each complaint is summarized below.

First, Ms. Lodico asserts that she complained that plaintiff talked down to her and erroneously accused her in the presence of a patient of having improperly prepared a radiopharmaceutical kit. (Lodico Dep. at 10-11; Lodico Decl. ¶ 6.) Ms. Lodico was upset and felt that plaintiff should not have confronted her regarding patient care in front of the patient, and that he should not have spoken to her in a rude manner. (Lodico Dep. at 10-11; Lodico Decl. ¶ 7.) Ms. Lodico claims to have complained about plaintiff's conduct to Ms. Leszcynski and also personally confronted plaintiff regarding his behavior. (Lodico Decl. ¶ 7.)

Second, Ms. Caputo asserts that she complained to Ms. Leszczynski that the manner in which plaintiff spoke to her was "in a demeaning and rude fashion," some of which occassions were in the presence of patients. (Caputo-Gangemi Decl. ¶¶ 8-9; *see also* Caputo-Gangemi Dep. at 10-11.) According to Ms. Caputo, she was upset by the plaintiff's treatment of her and complained to Ms. Leszcynski. (Camputo-Gangemi Decl. ¶ 9; Camputo-Gangemi Dep. at 14-15.)

Third, Mr. Raccioppi testified that he received a complaint from a doctor who informed him that plaintiff spoke rudely and unprofessionally to the doctor's secretary, calling her "an idiot." (Raccioppi Dep. at 26-27; Raccioppi Decl. ¶ 17.) According to Raccioppi, the doctor told him that he was furious about the manner in which plaintiff spoke to his secretary. (Raccioppi Dep. at 27; Raccioppi Decl. ¶ 17.)

In addition to these complaints, Mr. Raccioppi testified that he received a complaint from a Hospital employee that plaintiff was giving results to a patient over the phone in violation of Hospital policy. (Raccioppi Dep.

---

informed by Ms. Lodico that there was a ten-minute grace period from 8:00 a.m. to 8:10 a.m. in which you were not considered late. (Jean-Louis Dep. at 102-05, 113.) Defendants, however, point out that Hospital's policies and procedures provide that all employees must be punctual and arrive at work when scheduled. (Jean-Louis Dep. at 112-13; Raccioppi Decl.¶ 8 and Ex. A.) In any event, even if a ten-minute grace period existed, plaintiff was still late more than ten minutes on 38 days in his sixteen weeks of employment, including being more than 10 minutes late on 23 occasions after the May 30 warning. (Defs.' 56.1 ¶ 12.) As set forth *infra*, the existence or non-existence of this 10-minute grace period does not impact the Court's analysis of the evidence in this case or provide any basis for allowing the plaintiff's claims to survive summary judgment.

[5] Although the parties agree in the 56.1 statements that it was 55 times, the Court notes that the chart in paragraph 12 of the Defs.'s 56.1 Statement (and paragraph 10 in the Raccioppi Declaration) is missing the number "33." Therefore, only 54 instances are listed.

at 28-29; Raccioppi Decl. ¶ 18.)

With respect to each of these incidents, although plaintiff has no evidence to controvert that the complaints were made to management regarding his behavior, plaintiff did testify in his deposition (1) that these incidents with co-workers and others did not occur, (2) that he never had any issues with either Ms. Caputo or Ms. Lodico during his employment, and (3) that he was not notified of these complaints until his termination. (Jean-Louis Dep. at 39-40, 56, 59, 65, 73, 97-102.) Plaintiff further contends that defendants failed to follow their own investigation procedure, which involved investigating claims and bringing the conflicting parties together to resolve problems, when claims were made against plaintiff. (Raccioppi Dep. at 15-18.) Finally, with respect to disclosure of information on the telephone, plaintiff stated that he was not warned by Mr. Raccioppi at any time that such conduct was a violation of Hospital policy.[6]

---

[6] Defendants also submit evidence that plaintiff lied on his application for employment with the Hospital. Specifically, plaintiff indicated on his application that he worked as a nuclear medicine technologist at another hospital from December 2004 until February 2005. (Raccioppi Decl. ¶ 19 and Ex. E.) On his application, under "reason for leaving," he stated "very busy dep't and rude supervisor." (Raccioppi Decl. ¶ 19 and Ex. E.) However, at his deposition, plaintiff testified he was fired from that position. (Jean-Louis Dep. at 11-15, 83-86.) Although conceding he was fired and lied on his application, he stated he would have appealed his termination if he had been fully admitted to the union at that time. (*Id.* at 14-15.) The false statement on the application, however, is not relevant to the instant motion because the Hospital does not argue that the false statement was one of the grounds for termination. (Raccioppi Decl. ¶ 20.)

(Jean-Louis Dep. at 67-68, 98-99.)

(3) Plaintiff's Termination

On July 28, 2005, plaintiff was terminated. (Defs.' 56.1 ¶ 23.) Ms. Leszczynski called plaintiff into her office for a meeting with her and Mr. Raccioppi, where she explained the reasons why he was being terminated. (*Id.*) Ms. Leszczynski also provided plaintiff with a termination notice, which contained the following handwritten reasons for termination: "incompetence and misconduct, abusive or inconsiderate treatment of staff, excessive tardiness." (*Id.* at ¶ 24.) Under "details," the notice described the incident in which plaintiff gave patient results over the phone. (*Id.*) The notice also contained specific details regarding plaintiff's verbal altercation with a doctor's secretary, indicating that plaintiff called the doctor's office seeking patient information, and when the information was not readily available, he called the secretary "an idiot." (*Id.*) Plaintiff signed the notice, signifying his receipt of it, and wrote on the form in large print, "This is a Witchhunt and Discriminatory Blatant Racism." (*Id.* at ¶ 25.) This was the first instance where plaintiff notified the Hospital of any alleged discriminatory action. (*Id.*)

B. Procedural History

Plaintiff filed the complaint in this case on June 16, 2006. Defendants moved for summary judgment on August 17, 2007. Defendants moved for sanctions on October 17, 2007. The Court heard oral argument on defendants' motions on October 26, 2007.

II. Discussion

A. Summary Judgment Standard

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006).

The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 247. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F .3d 456, 466 (2d Cir. 2001) ("It is now beyond

5

cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

B. Title VII Discrimination Claims

1. Legal Standard

Plaintiff alleges discrimination under Title VII based upon race and/or national origin in connection with his termination by the North Shore University Hospital in July of 2005. As set forth below, the Hospital has demonstrated that it is entitled to summary judgment on this claim because no reasonable jury could find race and/or national origin discrimination based on the record in this case.[7]

Because plaintiff presents no direct evidence of discriminatory treatment based on his race and/or national origin, the Court reviews his claim under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-3 (1973). To establish a *prima facie* case of racial discrimination under Title VII, a plaintiff must show (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000). The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "*de minimis*." See *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

Once plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the' termination." *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996)). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253).

To meet this burden, the plaintiff may rely on evidence presented to establish his *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that he or she satisfies "*McDonnell Douglas's* minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . .

---

[7] Although defendants argue in a footnote that any national origin claim cannot proceed because plaintiff failed to bring such a claim in the EEOC Charge, the Court need not address that issue because it finds summary judgment is warranted on the other grounds set forth *infra*.

was false." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000). Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell v. Consolidated Edison Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove-particularly discrimination." 233 F.3d at 157; *see Lapsley v. Columbia Univ.*, 999 F. Supp. 506, 513-16 (S.D.N.Y. 1998) (advocating elimination of *McDonnell Douglas* test in favor of simplified approach focusing on ultimate issue of whether sufficient evidence exists to permit jury to find discrimination); *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir.1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

2. Application

Defendants argues that plaintiff cannot establish a *prima facie* case because he cannot demonstrate that he satisfactorily performed the duties of his position, nor can he establish that the firing occurred under circumstances giving rise to an inference of discrimination. However, for purposes of this motion, the Court assumes that plaintiff has satisfied the minimal burden required by *McDonnell Douglas* to make out a *prima facie* case.[8] In

---

[8] The Court notes that, despite the minimal burden for demonstrating a *prima facie* case, it is highly questionable whether plaintiff has met that burden. As discussed *supra*, it is undisputed that plaintiff was chronically late during his sixteen weeks of employment despite at least one warning. Thus, there is support for defendants' argument that he fails prong two ("performing his job satisfactorily"). *See Gregory v. Daly*, 243 F.3d 687, 696 n.7 (2d Cir. 2001) ("Of course, there will also be circumstances in which a plaintiff's performance is so manifestly poor as to render [him] unqualified for continued employment and thereby defeat [his] *prima facie* case."); *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997) (affirming summary judgment finding that no *prima facie* case had been demonstrated where the employer rated plaintiff's work unsatisfactory on a majority of criteria and plaintiff did not contest most of these ratings). In fact, other courts have granted summary judgment for defendants under analogous circumstances. *See, e.g., Singh v. Home Depot, Inc.*, No. 00 Civ. 6497, 2003 WL 21 909776, at *5-*6 (E.D.N.Y. July 23, 2003) (granting summary judgment for defendant where it was undisputed that plaintiff was violating the defendant's policy as to working only on scheduled days and, thus, plaintiff failed to make a *prima facie* case); *Brady v. KBI Sec. Servs., Inc.*, 91 F. Supp. 2d 504, 509-10 (E.D.N.Y. 2000) (granting summary for defendant where plaintiff was, among other things, excessively tardy and absent after several warnings and, thus, could not satisfy *prima facie* case); *Wiebke v. Hanjin Shipping Co.*, No. 97 Civ. 7287, 1999 WL 292554, at *2 (S.D.N.Y. May 7, 1999) (same). However, in an abundance of caution, the Court will assume that he has made the "minimal showing" that he "'possesses the basic skills necessary for performance of [the] job'" to satisfy prong two of his *prima facie* case, *Gregory*, 243 F.3d at 696 (quoting *Owens v. N.Y. City Housing Auth.*, 934 F.2d 405, 409 (2d Cir. 1991) (internal quotation omitted)), because as discussed in detail *infra*, defendants are entitled to summary judgment even if plaintiff has met his *prima facie*

7

response, defendants have put forth a non-discriminatory reason for the termination – namely, plaintiff's incompetence, misconduct, abusive or inconsiderate treatment of staff and excessive tardiness. Hence, the Court proceeds directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find race and/or national origin discrimination by examining each parties' evidence as a whole. *See Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir. 1997).

In support of its position that plaintiff was fired due to incompetence, misconduct, abusive or inconsiderate treatment of staff and excessive tardiness, defendants point to several pieces of evidence. First, defendants point to 54 instances, during plaintiff's sixteen-week term of employment, in which plaintiff was late for work. Moreover, defendants have submitted written documentation that Mr. Raccioppi warned plaintiff on three occassions – April 28, 2005; May 30, 2005; and July 27, 2005 – that he must immediately correct his late arrivals but the lateness still continued. Second, defendants rely upon evidence regarding three instances in which complaints were made that plaintiff acted inappropriately or unprofessionally toward coworkers and others. Specifically, defendants provide evidence of complaints made by Ms. Lodico and Ms. Caputo regarding plaintiff's alleged inappropriate treatment towards them. Defendants also rely upon evidence of a complaint regarding a verbal altercation plaintiff had with a doctor's secretary, in which plaintiff allegedly called the secretary "an idiot." Further, defendants provide evidence that plaintiff violated hospital policy by providing patient results over the telephone.

---

case.

Plaintiff makes a futile attempt to try to undermine these articulated, non-discriminatory grounds for termination or to create factual issues regarding these grounds. For example, plaintiff argues the following: (1) he thought a 10-minute grace period existed with regard to lateness; (2) he was never warned about lateness except on May 30; (3) he improved his punctuality after the May 30 verbal warning; and (4) he did not treat any co-workers or other people in a rude or inappropriate manner and did not violate Hospital policy by providing results to patients over the telephone.

However, none of these arguments can overcome the overwhelming and *undisputed* evidence supporting the legitimate non-discriminatory reasons for the termination, including that (1) plaintiff was late 54 times in his first sixteen weeks of employment, including being late on 29 days in the two-month period after he was verbally warned about his lateness on May 30; and (2) management received four complaints about his treatment of co-workers and others.

With respect to the complaints by co-workers and others, plaintiff contends that defendants did not act in accordance with Hospital policy in failing to conduct a full investigation as to Lodico and Caputo's complaints. Plaintiff cites the purported lack of an investigation as evidence of the discriminatory nature of plaintiff's termination. As a threshold matter, the Court finds these conclusory allegations of an inadequate investigation of these complaints to be insufficient to create a genuine issue of disputed fact. In any event, the fact that an employee disagrees with an employer's decision whether or not to conduct an investigation, or the reasons given for the

8

termination, does not demonstrate, by itself, that the employer's proffered reasons are a pretext for termination. *See, e.g., McLee*, 109 F.3d at 135 (finding summary judgment appropriate on Section 1981 and Title VII discriminatory discharge claims where plaintiff's "disputations [of his employer's proffered explanations] were rationalizations for his deficiencies rather than demonstrations of any genuine issue of material fact to be tried"); *Rorie v. United Parcel Serv., Inc.*, 151 F.3d 757, 761 (8th Cir. 1998) (stating that "the relevant inquiry was whether [plaintiff] created a genuine issue of material fact as to whether her discharge was gender-based and not whether her termination was reasonable" and noting that "[i]t is not the task of this court to determine whether [the investigator's] investigation was sufficiently thorough or fair"); *Brown v. Soc. for Seaman's Children*, 194 F. Supp. 2d 182, 191 (E.D.N.Y. 2002) ("[A]lthough plaintiff felt she had been treated unfairly, . . . [t]here simply is no basis in the record from which a rational juror could find that the reasons given for plaintiff's termination . . . were false or a pretext for discrimination."); *Ricks v. Conde Nast Publ'n., Inc.*, 92 F. Supp. 2d 338, 347 (S.D.N.Y. 2000) ("The mere fact that an employee disagrees with her employer's assessments of her work . . . cannot[,] standing on its own show[,] that her employer's asserted reason[s] for termination [were] pretextual.") (internal citation omitted)*; see also D'Cunha v. N.Y. Hosp. Med. Ctr. of Queens*, No. 02 Civ. 5445 (DLI), 2006 WL 544470, at *6 (E.D.N.Y. Mar. 6, 2006). An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984).

Assuming *arguendo* that the Hospital could have conducted more investigation as to these complaints about plaintiff's behavior towards co-workers and others, there is absolutely nothing to suggest that there failure to do so was done for a discriminatory purpose. In fact, it is abundantly clear from the record that, even without these complaints, the Hospital had another compelling basis for terminating plaintiff – that is, he was late 54 times in his first sixteen weeks. With respect to the lateness issue, even if this Court were to assume all of plaintiff's facts to be true and draw all reasonable inferences in plaintiff's favor, plaintiff has done absolutely nothing to undermine that basis for termination. His arguments in defense of his lateness are shockingly weak. For instance, plaintiff claims that he was not late 54 times because plaintiff was entitled to a ten-minute grace period. However, even assuming *arguendo* that such a grace period existed, which defendants deny, plaintiff was still late to work on 38 occasions in which he was beyond this purported ten-minute grace period. Further, plaintiff states that he was only warned about his tardiness on one occasion (May 30, 2005), and not three occasions as defendants contend. However, even assuming *arguendo* that this was the only warning plaintiff received, plaintiff was late 29 times following this warning (including 23 times when he was more than 10 minutes late). Thus, although plaintiff claims that his punctuality improved following the warning, the undisputed time records prove that he continued to be late on numerous occasions.

Not only has plaintiff failed to undermine the strength of the Hospital's articulated non-discriminatory reasons for the termination, he has failed to offer any evidence whatsoever to suggest that race or national origin had any role in plaintiff's employment or termination.

Plaintiff provides no evidence to contradict the evidence offered by defendants and, instead, relies solely on his own conclusory statements in an attempt to create genuine issues of fact for trial, including the following: (1) plaintiff testified at his deposition that Ms. Lodico and Ms. Caputo discriminated against him because he was the only African-American in the department, and they were supposed to "help [him] out," and not "go and complain about something." (Jean-Louis Dep. at 59); (2) plaintiff testified at his deposition that Ms. Lodico and Ms. Caputo discriminated against him because "these girls . . . they don't want to listen or take orders from a black man who's on top of them," even though plaintiff admits he was not their supervisor (Jean-Louis Dep. at 51-53, 62-63, 127); (3) plaintiff testified at his deposition that Ms. Leszcynski discriminated against him by failing to bring Ms. Lodico and Ms. Caputo into her office while she was terminating plaintiff so he could confront them regarding their complaints about him (Jean-Louis Dep. at 68-69); and (4) plaintiff testified at his deposition that Ms. Lodico and Ms. Caputo discriminated against him for not following his advice on getting the Hospital's camera repaired. (Jean-Louis Dep. at 59-65.)

In a motion for summary judgment the nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the adverse party's pleading," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (internal quotation marks and citation omitted). Here, plaintiff's allegations of discrimination relating to his termination are based solely on the above-referenced conclusory statements and personal beliefs. *See Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996) (holding that the assertion of personal beliefs insufficient to show pretext), *cert. denied*, 520 U.S. 1228, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997). Furthermore, "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). Plaintiff has not presented any direct or circumstantial evidence from which a reasonable fact-finder could infer a causal relationship between the plaintiff's protected class membership and the discipline to which he was subjected.

Finally, although plaintiff also makes a conclusory attempt to argue that white employees (such as Ms. Langham, Ms. Lodico, and Ms. Caputo) came in late but were not reprimanded for such conduct, this argument is equally unavailing. Plaintiff has failed to point to any other employee who exhibited the chronic lateness or engendered the number and type of coworker complaints for which plaintiff was terminated. *See Graham v. Long Island R.R.,* 230 F.3d 34, 40 (2d Cir. 2000) (stating that to be "similarly situated" for Title VII purposes, plaintiff must establish "reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's case, rather than a showing that both cases are identical," and their acts must be "of comparable seriousness"); *see also Butts v. N.Y. City Dep't of Hous. Pres.*, No. 00 Civ. 6307 (KMK), 2007 WL 259937, at *10 (S.D.N.Y. Jan. 29, 2007) (granting summary judgment where plaintiff offered only "general and speculative allegations" that plaintiff was "treated differently than similarly situated employees not of Plaintiff's protected class"). Specifically, although he makes conclusory allegations of lateness by others, he has failed to produce a single time card or witness to

substantiate his claim that these individuals were similarly situated to him in terms of chronic lateness. In fact, plaintiff conceded at this deposition that he has no personal knowledge of a single employee – probationary or otherwise – who suffered from chronic lateness to his extent and was not disciplined in the same manner he was.[9] (Jean-Louis Dep. at 133-34.) In addition, plaintiff has put forth no evidence that other similarly situated employees were subject to inconsistent disciplinary actions and that any such inconsistency was motivated by his race and/or national origin. Instead, he simply speculates that, because he was the "the only Black male within the Department," his termination must have been due to his race and/or national origin. (Plaintiff's Opp. at 12.) Such speculation, in the absence of any proof to support it, is insufficient to overcome defendants' summary judgment motion as to the discrimination claims based on race and/or national origin.

In sum, considering the evidence as a whole, and viewing all the evidence in the light most favorable to plaintiff, no reasonable jury could find that plaintiff was terminated because of his race and/or national origin. Although plaintiff has offered several arguments to defeat summary judgment, "their combined weight is negligible, and no disputed material issues of fact remain." *Pisana v. Merrill Lynch & Co.,* No. 93 Civ. 4541 (LMM), 1995 U.S. Dist. LEXIS 10296, at *29 (S.D.N.Y. July 20, 1995) (granting summary judgment as to ADEA claim). The Court recognizes that it must proceed with great caution in granting summary judgment in discrimination cases where intent, as drawn from inferences, is a core issue. However, as the Second Circuit has noted, "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). That is precisely the situation here. Plaintiff relies on pure speculation and has not produced sufficient evidence to support a rational finding that, more likely than not, plaintiff's race and/or national origin was the real reason for the termination. Accordingly, the Court finds that plaintiff has failed to raise a genuine question of fact as to his race and/or national origin claims and grants defendants' motion for summary judgment on such claims.

3. Plaintiff's New York State Human Rights Law Claims

Claims of discrimination under "NYSHRL are analyzed identically to claims under . . . Title VII," and "the outcome of an employment discrimination claim made pursuant to NYSHRL is the same as it is under . . . Title VII." *Smith v. Xerox Corp.,* 196 F.3d 358, 363 n.1 (2d Cir. 1999). "Thus, NYSHRL claims are generally considered 'in tandem' with Title VII claims, *see Leopold v. Baccarat, Inc.,* 174 F.3d 261, 264 n.1 (2d Cir. 1999), and a district court need not explicitly evaluate a plaintiff's NYSHRL claims where it has throughly analyzed the plaintiff's Title VII claims. *Smith,*

---

[9] The only documentary evidence regarding lateness by other employees was offered not by plaintiff, but by defendants to show that, with respect to Ms. Caputo, Mr. Raccioppi warned her in January 2007 because she arrived to work late on four occasions during that month and, after the warning, she corrected the issue. (Raccioppi Decl. ¶ 12 and Ex. D.) Clearly, Ms. Caputo was not similarly situated to plaintiff who, based on the undisputed evidence, was late on 54 occasions, including 29 occasions in the two months following his warning.

11

196 F.3d at 363 n.1." *Drummond v. IPC Int'l, Inc.,* 400 F. Supp. 2d 521, 535-36 (E.D.N.Y. 2005). The Court exercises supplemental jurisdiction over plaintiff's state claims because the same standard is applicable and, thus, judicial economy warrants consideration of these claims. As to the state claims, for the same reasons the Court found that the Title VII claims cannot survive summary judgment, the Court concludes that defendants are entitled to summary judgment on the state discrimination claims.[10]

D. Defendants' Motion for Sanctions

Defendants seek to impose sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), against Jean-Louis and his counsel. Specifically, defendants claim that, in filing the complaint, plaintiff submitted a pleading that was not warranted by existing law or by a good-faith argument for the extension, modification, or reversal of existing law, or for the establishment of new law, and continued to pursue such claims, and oppose summary judgment with no legal or factual basis. (Defendants' Mem. in Support of Sanctions at 7-12.) For the reasons that follow, defendants' motion for sanctions is denied.

Under Rule 11, to avoid the risk of sanctions, a plaintiff's counsel must undertake reasonable inquiry to "ensure that papers filed are well-grounded in fact, legally tenable, and not interposed for any improper purpose."[11] *Gal v. Viacom Intern., Inc.*, 403 F. Supp. 2d 294, 307 (S.D.N.Y. 2005) (quoting *Cooter &*

---

[10] In addition, plaintiff asserts NYSHRL claims against the individual defendants. Under the NYSHRL standard for aiding and abetting liability, "there is . . . a requirement that liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor." *See Drummon v. IPC Int'l, Inc.,* 400 F. Supp. 2d at 536 (holding that plaintiff's failure to establish a NYSHRL claim against employer requires dismissal of individual employees liability for aiding and abetting); *see also DeWitt v. Lieberman,* 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999) (holding that supervisor who committed the sexual harassment not held liable under § 296(6) because plaintiff could not state a claim of sexual harassment against the employer); *Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F. Supp. 2d 477, 490-91 (S.D.N.Y. 1999) (holding that plaintiff failed to establish liability against individual defendant's employer thereby eliminating her claims against the individual defendant as an aider and abettor under the NYSHRL). Because plaintiff has failed to establish the employer's liability, plaintiff's claims against the individual defendants also are dismissed.

[11] Initially, the Court notes that defendants have satisfied the procedural requirements for filing the instant motion. A request for sanctions must be made by separate motion, Fed. R. Civ. P. 11(c)(1)(A), "and failure to do so is a ground for denial of sanctions," *Daniel v. Safir*, 135 F. Supp. 2d 367, 378 (E.D.N.Y. 2001) (quoting *Lambertson v. Kerry Ingredients, Inc.*, 50 F. Supp. 2d 163, 170 (E.D.N.Y. 1999)). In addition, a motion for sanctions under Rule 11 must describe the "specific conduct alleged to violate" the rule. Finally, the motion must be served on the subject of the motion, "but shall not be filed with or presented to the court unless, within 21 days after service of the motion ... the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn." Fed. R. Civ. P. 11(c)(1)(A); *see Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 389 (2d Cir.2003). Here, defendants (1) made their request for sanctions by separate motion; (2) specified the conduct alleged to violate the provisions of Rule 11; and (3) served the motion on plaintiff on September 21, 2007, but did not submit it to the Court until more than 21 days later, on October 17, 2007.

12

*Gell v. Hartmarx Corp.*, 496 U.S. 384, 393,(1990)) (internal quotation marks omitted). In considering a motion for sanctions under Rule 11, this Court applies an objective standard of reasonableness. *See MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1257-58 (2d Cir. 1996). Moreover, "Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success," *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) (internal quotation marks omitted). Additionally, "when divining the point at which an argument turns from merely losing to losing and sanctionable, . . . courts [must] resolve all doubts in favor of the signer" of the pleading. *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (internal quotation marks omitted).

The Court has no reason to believe that plaintiff and his counsel knew at the time the lawsuit was filed that it was frivolous. For example, as noted *supra*, plaintiff appears to have believed that other similarly situated white workers were late and treated differently from plaintiff. Although discovery produced absolutely no evidence to support plaintiff's belief that such similarly situated employees existed, there is insufficient basis to conclude that plaintiff's erroneous assertion was made in bad faith. *See, e.g., Nesmith v. Martin Marietta Aerospace,* 833 F.2d 1489, 1491 (11th Cir. 1987) (in finding Rule 11 sanctions unwarranted, court noted, "The evidence [plaintiff] presented not only failed to indicate discriminatory treatment, but instead revealed that [plaintiff] received several salary increases and promotions during his tenure. [Plaintiff] made no showing that other similarly situated members of the unprotected class were treated preferentially nor did he present evidence of retaliation. Under these circumstances, it is apparent that [plaintiff's] claim may be characterized as without foundation, but there is no evidence that he was in bad faith in bringing the claim, or that it was brought for any purpose other than to receive what he thought he was entitled to under the law."); *Grant v. Pfizer, Inc.,* 683 F. Supp. 41, 45 (S.D.N.Y. 1988) ("While plaintiff did not succeed in coming forward with the evidence necessary to survive defendant's motion for summary judgment, her attorney's expectation that discovery would produce such evidence was neither unreasonable nor vexatious."). Thus, resolving all doubts in favor of the signer of the complaint, this Court finds that "a competent attorney could ... form a reasonable belief that the signed paper was well grounded in fact." *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 622 (2d Cir.1991).

Similarly, although plaintiff and his counsel opposed the summary judgment motion even after discovery produced no evidence to support plaintiff's discrimination claims, the Court does not find such opposition to be sanctionable. In the opposition, plaintiff cited the legal standard and attempted to raise disputed factual issues regarding his underlying conduct at the job as it related to the complaints by co-workers and challenge the employer's investigation. Although the Court determined that any such disputed issues were not material given the undisputed evidence regarding plaintiff's termination and the lack of any evidence of discriminatory intent, the Court does not view plaintiff's opposition to have been submitted in bad faith.

In short, even though the basis for this lawsuit was extremely thin and the unsuccessful opposition to the summary judgment motion was very weak, the Court does not believe sanctions are warranted under the particular circumstances of this case. *See, e.g., Mareno v. Rowe,* 910 F.2d 1043 (2d Cir. 1990) ("The positions advanced by [plaintiff]

and his attorney, however faulty, were not so untenable as a matter of law as to necessitate sanction. Nor did they constitute the type of abuse of the adversary system that Rule 11 was designed to guard against."); *see also Scientific Components Corp. v. Sirenza Microdevices, Inc.,* No. 03 Civ. 1851 (NGG) 2007 WL 1026411, at *5 (E.D.N.Y. Mar. 30, 2007) ("The court agrees that [the defendant] has been imprudent in choosing to litigate this claim. However, Rule 11 sanctions are not appropriate where there is a viable claim that is weak."); *Eisenberg v. Yes Clothing Co.*, No. 90 Civ. 8280 (JFK), 1992 WL 36129, at *4 (S.D.N.Y. Feb. 19, 1992) ("Rule 11 sanctions are not to be imposed on every litigant that files a motion that the Court deems premature, or ill-advised, or weak."); *see generally Christiansburg Garment Co. v. EEOC,* 434 U.S. 412 (1978) (warning against the use of "hindsight logic" that "because plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation").

Accordingly, defendants' motion for sanctions under Rule 11 is denied.

### III. Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED in its entirety on all claims. This case is DISMISSED. Defendants' motion for sanctions under Rule 11 is DENIED. The Clerk of the Court is directed enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 14, 2007
Central Islip, NY

\*\*\*

The attorneys for plaintiff are Rick Ostrove & Thomas Ricotta of Leeds, Morelli & Brown, P.C., One Old Country Road, Suite 347, Carle Place, N.Y. 11514. The attorneys for defendants are Leonard M. Rosenberg & Peter G. Siachos of Garfunkel, Wild & Travis, P.C., 11 Great Neck Road, Great Neck, New York 11021.